IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Vita Maglieri, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 16-cv-7033<br>) |
| Costco Wholesale Corp., et al., | )<br>)<br>) |
| Defendants. | )<br>) |

## **Memorandum Opinion and Order**

Plaintiff Vita Maglieri brought this suit against her employer Costco Wholesale Corporation ("Costco") and several of her former supervisors (together "defendants"), alleging discrimination and retaliation under the Age Discrimination in Employment Act (ADEA) and the Family Medical Leave Act (FMLA), as well as state-law claims for intentional infliction of emotional distress (IIED), negligent infliction of emotional distress (NIED), and *respondeat superior* liability. Before me is defendants' motion for summary judgment, which I grant for the reasons that follow.

**I.**

The following facts are undisputed except where noted. In November 2013, at the age of 54, Vita Maglieri began working as a bakery wrapper in the bakery department at defendant Costco's

warehouse in Mt. Prospect, Illinois. Def.'s L.R. 56.1 Stmt. ¶ 4. Maglieri worked there until February 2015, when she took a medical leave of absence and subsequently transferred to another Costco location, where she continues to work today. *Id.*

At all times relevant to this lawsuit, Maglieri's direct supervisor was defendant Julie Kornecki, the manager of the Mt. Prospect bakery department. *Id.* ¶ 5. Kornecki was 57 years old at the time of Maglieri's hire. *Id.* During the same period, defendants Robert Landrum and Matt Harris were the assistant warehouse managers at the Mt. Prospect location, and defendant Michelle Riggott was the Mt. Prospect warehouse manager. *Id.* ¶¶ 6-8.

As a bakery wrapper, Maglieri was responsible for wrapping and packaging finished bakery items and putting them out in the store for customers. *Id.* ¶ 20. In the bakery department—a large commercial kitchen space equipped with loud industrial equipment—Maglieri worked alongside other bakery wrappers, as well as some bakers, cake decorators, and maintenance workers, who also reported to Kornecki. *Id.* ¶¶ 21, 71; Kornecki Dep. at 14.

Kornecki's conduct is the focus of Maglieri's suit. According to Maglieri, Kornecki frequently yelled and screamed at her, often in a "nasty" or "intimidating" voice, about working faster. Maglieri Dep. 53-57, 60, 77, 100. Maglieri

2

states that this behavior started on her first day of work and continued throughout her employment at the Mt. Prospect location. *Id.* Maglieri felt bullied, and Kornecki's conduct often made her nervous and upset. *Id.* at 28-29. On at least one occasion, Maglieri says she cried in front of customers after Kornecki yelled at her. *Id.* at 30, 57, 79, 102; Donald Dep. at 20.

Maglieri admits that Kornecki yelled at other employees, but she does not recall Kornecki ever yelling at other bakery department workers about working faster. Maglieri Dep. at 121. According to Maglieri's coworker and fellow bakery wrapper Tanya Donald, however, Kornecki became impatient with everyone who she felt was working too slowly. Donald Dep. at 15-16. At her deposition, Donald explained that Kornecki was sometimes mean and abrasive with her subordinates, and that she would sometimes yell to motivate employees. *Id.* at 30-32, 39-40, 48. Donald testified that she believed she generally experienced all of the same treatment that Maglieri did. *Id.* at 48-49. But she did recall Kornecki once telling her around the time that Maglieri started working at Mt. Prospect that she was "kind of surprised that [Costco] didn't hire someone younger" than Maglieri. *Id.* at 22-23, 52-53.

Maglieri's three performance reviews—one after 30 days of work, one after 90 days, and one after a year—all reflected

3

Kornecki's concerns with Maglieri's work speed. Maglieri Dep., Exhs. 4-6. While Kornecki had many positive things to say about Maglieri's performance, she also offered several criticisms, including that Maglieri needed to work on her "sense of urgency," her wrapping speed, and her ability to manage time effectively and meet deadlines. *Id.*

In addition to feeling bullied by Kornecki's yelling, Maglieri also grew frustrated with Kornecki's slow responses to her time-off requests. Maglieri Dep. at 30, 64. During her fifteen months at the Mt. Prospect warehouse, Maglieri submitted several time-off requests for family weddings, engagement parties, and events—two requests in January 2014, one in July 2014, and two in December 2014. Def.'s L.R. 56.1 Stmt. ¶¶ 31, 44, 59, Exh. 18. At one point, Maglieri complained to defendant Matt Harris about Kornecki's delay in granting her requests. Harris Dep. at 44-45. Ultimately, Kornecki granted all but one of these requests, but she took several weeks (and, in one case, months) to do so. Maglieri Dep. at 112, 125, 181; Def.'s L.R. 56.1 Stmt. Exh. 18.

Sometime after Maglieri's 90-day performance review, she complained to defendant Robert Landrum about the way Kornecki was treating her. She told him that Kornecki was bullying her and not giving her time off. Maglieri Dep. at 68-69; Landrum Dep. at 52-53. Landrum stated that he would talk to Kornecki

4

about Maglieri's concerns. Maglieri Dep. at 69; Landrum Dep. at 56.

In March 2014, Maglieri took FMLA leave to take care of her husband, who had suffered a heart attack after being involved in a car accident. Maglieri Dep. at 46-47. She did not return to work until two months later. Maglieri Dep. at 48-49. Upon her return in mid-May, she contends that Kornecki's offensive behavior increased. In June or July, Maglieri overheard Kornecki say, "Karma is a bitch," to a coworker, which Maglieri assumed was in reference to her husband. Maglieri Dep. at 83-84, 177-78. And in July, Maglieri recalls Kornecki complaining about her "taking off way too much time" and threatening to transfer her. Maglieri Dep. at 86. Around the same time, Maglieri also requested two lift restrictions, which Kornecki approved, despite some "yelling" and "screaming." Maglieri Dep. at 84-86.

At some point in 2014, Maglieri reached out to assistant manager Harris about her problems with Kornecki. Harris Dep. at 46-47. In their conversation, Maglieri did not say anything about age discrimination, but she did complain about "being picked on" by Kornecki. *Id.* As a result of the meeting, Harris says that he spoke to Kornecki about "ton[ing] it down." *Id.* at 48-49. Maglieri also inquired with Harris and manager Michelle Riggott about the process for transferring departments. Maglieri Dep. at 88, 154; Harris Dep. at 64; Riggott Dep. at 54. At some

5

point, Maglieri applied for a cashier job but was not selected for the position. Maglieri Dep. at 88-89; Riggott Decl. ¶ 17.

In January 2015, Maglieri again approached Harris to discuss Kornecki's behavior. She brought with her fifteen pages of handwritten notes about the unfair treatment she believed she had experienced in the baking department. Maglieri Dep. at 98; Harris Decl. ¶¶ 11-12, Exh. B. The notes, which she provided to Harris, did not say anything about age discrimination, but they did recount many of the incidents described above. Harris Decl. ¶ 12, Exh. B. During their meeting, Maglieri and Harris again discussed the possibility of her transferring, and Harris said that he would look over her notes, speak with Riggott, and get back to Maglieri. Maglieri Dep. at 154-58; Harris Dep. at 67.

On February 3, 2015, Maglieri, who had not yet heard back from Harris, made a second FMLA leave request, this time to address her own health concerns on her psychiatrist's recommendation. Maglieri Dep. at 143; Pl.'s L.R. 56.1 Stmt., Exhs. 8-9. Costco approved the request. Maglieri Dep. at 145. After her leave, instead of returning to Mt. Prospect, she voluntarily transferred to Costco's Glenview, Illinois, warehouse, where she currently works. Maglieri Dep. at 147, 150.

## II.

Defendants seek summary judgment on all of Maglieri's ADEA, FMLA, and state-law claims. Summary judgment is appropriate

"when, viewing all facts and inferences in favor of the nonmoving party, no genuine dispute as to material fact exists, and the moving party is entitled to judgment as a matter of law." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citing Fed. R. Civ. P. 56(a); *Hudson Ins. Co. v. City of Chi. Heights*, 48 F.3d 234, 237 (7th Cir. 1995)). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## A. ADEA claims

Maglieri alleges that Costco discriminated against her because of her age in violation of the ADEA and retaliated against her for complaining about this discrimination. The ADEA protects workers age 40 and above—like Maglieri—from age-based discrimination in the workplace. 29 U.S.C. § 623(a). Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *see also Carson v. Lake Cty., Ind.*, 865 F.3d 526, 532 (7th Cir. 2017). It is also unlawful for an employer to discriminate against its employees for opposing any practices made unlawful by the ADEA. 29 U.S.C. § 623(d).

7

To prove her ADEA discrimination claim, Maglieri "must establish that [Costco] subjected [her] to an adverse employment action because of [her] age." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453 (7th Cir. 2011); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009) (holding that a plaintiff must establish that age is a "but-for" cause of the challenged adverse action to prevail on an ADEA discrimination claim). Importantly, "not everything that makes an employee unhappy is an actionable adverse action." *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007). To be actionable, an employment action must "visit[] upon a plaintiff a significant change in employment status." *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016)(internal quotation marks and citation omitted). Actionable adverse actions "generally fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton*, 662 F.3d at 453–54. Maglieri contends that Kornecki's harassment created a hostile work environment and that Kornecki's conduct forced her to take a medical leave of absence in February 2015, which caused her a reduction in pay.

The Seventh Circuit "has assumed, but never decided, that plaintiffs may bring hostile environment claims under the ADEA." *Racicot v. Wal-Mart Stores, Inc.,* 414 F.3d 675, 678 (7th Cir. 2005) (citing *Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 660 (7th Cir. 2001); *Halloway v. Milwaukee County*, 180 F.3d 820, 827 (7th Cir. 1999)). For the purposes of this motion, I will assume that such a claim is cognizable.

To show an actionable hostile work environment, Maglieri must demonstrate that (1) she was subjected to unwelcome harassment, (2) the harassment was based on a proscribed factor (age), (3) "the harassment was severe and pervasive enough to alter the conditions of [employment] and create a hostile and abusive working environment, and (4) there is a basis for employer liability." *Andonissamy v. Hewlett-Packard Co.,* 547 F.3d 841, 847 (7th Cir. 2008). It is not enough that Maglieri "subjectively sees [defendants' conduct] as abusive." *Id.* To prevail on a hostile work environment theory, she must establish that the workplace was "both subjectively and objectively offensive." *Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2005).

I agree with Costco that the record does not reasonably support Maglieri's claim that she was harassed *because of* her age. In fact, in all the depositions, declarations, and other evidence adduced, there is only one example of Kornecki, who is

Maglieri's senior, commenting on Maglieri's age. According to Donald, Kornecki said that she was "surprised [Costco] didn't hire someone younger" for the bakery wrapper position. Donald Dep. at 22. At most, Kornecki's comment, when viewed in the light most favorable to Maglieri, could support an inference that initially Kornecki would have preferred someone younger for the position. But this sole age-based comment, which was not directed at Maglieri and did not contain any prejudiced views or derogatory slurs, is not enough to establish that Kornecki harassed Maglieri over the subsequent fifteen months because of Maglieri's age. *Cf. Luckie v. Ameritech Corp.,* 389 F.3d 708, 713 (7th Cir. 2004) (supervisor's comments were not "sufficiently connected to race so as to satisfy the second element of the hostile environment analysis"); *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (affirming summary judgment on a sex-based hostile work environment claim where only four of the ten offensive incidents were sexual in nature), *overruled in part on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013); *Halloway v. Milwaukee Cty.*, 180 F.3d 820, 827 (7th Cir. 1999) (defendants' comments encouraging plaintiff to retire were not enough to show that alleged harassment was age-based); *see also Mason v. S. Illinois Univ. at Carbondale*, 233 F.3d 1036, 1046 (7th Cir. 2000) ("Mean-spirited or derogatory behavior of which a plaintiff is unaware, and thus never

experiences, is not 'harassment' of the plaintiff (severe, pervasive, or other).").

Perhaps recognizing the lack of evidence that Kornecki targeted Maglieri due to age-based animus, Maglieri asserts that Kornecki's comments about Maglieri's "slowness" and "lack of urgency" were just a veiled way of harassing her about her age. The ADEA prohibits employers from relying on age "as a proxy for an employee's [work-related] characteristics, such as productivity." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993). But it does not bar employers from focusing directly on work-related characteristics themselves. *See Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1196 (10th Cir. 2010) (rejecting notion that employer concern regarding employee work pace and productivity was "a mask for age discrimination"). Not completing work quickly enough is a legitimate workplace criticism. The record reflects that Kornecki thought Maglieri needed to "manage[] her time effectively" and work on her speed and "sense of urgency." Maglieri Dep. Exh. 5. It also reflects that Kornecki often conveyed this to Maglieri by yelling at her or by using a discourteous tone. It does not reflect, however, that Kornecki did this because of Maglieri's age. A reasonable jury could not conclude that Kornecki's criticism of Maglieri's productivity was veiled age discrimination rather than genuine

concern about keeping up with the pace of the workplace.[1] *See Bennington*, 275 F.3d at 660 (no evidence that supervisors' "rude or unfair" conduct was discriminatory).[2]

Maglieri's ADEA retaliation claim similarly cannot withstand summary judgment. To succeed on an ADEA retaliation claim, a plaintiff must show that (1) she engaged in ADEA-protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse action. *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 464 (7th Cir. 2016). I agree with defendants that Maglieri has not provided evidence that she engaged in any ADEA-protected activity. Maglieri did complain to defendants Harris and Landrum about Kornecki's "yelling" and "bullying." Def.'s L.R. 56.1 Stmt. ¶¶ 38, 61-62; Pl.'s L.R. 56.1 Stmt. ¶¶ 11, 15. But in order for these complaints to constitute protected activity, they had to "include an objection to discrimination on the basis of age." *Smith v. Lafayette Bank &*

---

[1] Maglieri's reliance on *Morse v. Ill. Dept. of Corrections*, 191 F. Supp. 3d 848, 859 (N.D. Ill. 2015), is misplaced. In that case, I permitted a suspended worker's age discrimination claim to proceed, where one of her supervisors had complained that she was "old and slow" and another expressed his preference for younger workers and his desire to replace her with a younger worker.

[2] Maglieri's attempt to characterize her 2015 FMLA leave as an adverse action is no more than a restatement of her hostile work environment theory. Even if I were to assume that it was Kornecki's unpleasant behavior that prompted Maglieri to request leave, Maglieri cannot, as discussed above, show that Kornecki's conduct was age-based harassment.

*Trust Co.*, 674 F.3d 655, 658 (7th Cir. 2012). "Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). When Maglieri approached Costco management about Kornecki's behavior she never indicated that she believed she was being singled out and harassed because of her age, nor did she provide details that would have led to such an inference. Pl.'s L.R. 56.1 Stmt. ¶¶ 11, 14-15. Indeed, of the 62 paragraphs in the handwritten notes that Maglieri gave to Harris, not a single one mentioned anything about age. Harris Decl. ¶ 12, Exh. B.

Moreover, even if Maglieri had complained of age discrimination, she still would not be able to support her retaliation claim because she has not identified an adverse action. Maglieri repeats her hostile work environment theory, but that argument fails both for the reasons discussed above and because retaliation claims require more than just a showing that discriminatory conduct continued after it was reported. *See McDonnell v. Cisneros*, 84 F.3d 256, 259 (7th Cir. 1996) ("continuation of conduct" underlying complaint of discrimination not actionable as retaliation). Maglieri also argues that Costco's investigation of her complaints was

13

inadequate, but she does not provide any authority for treating evidence of an inadequate investigation as an adverse action. *Cf. Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010). Because Maglieri can neither demonstrate that she was engaged in protected activity nor that she suffered an adverse action, her ADEA retaliation claim meets its end at summary judgment.

**B. FMLA Claim**

Maglieri also claims that Costco retaliated against her because she took FMLA leave in 2014 following her husband's heart attack. The FMLA entitles an eligible employee to twelve workweeks of leave during a twelve-month period in order to care for a spouse who has a serious medical condition. 29 U.S.C. § 2612(a)(1). The statute also makes it unlawful for an employer to retaliate against an employee for taking such leave. 29 U.S.C. § 2615(a). To prevail on a FMLA retaliation claim, a plaintiff needs to demonstrate that "(1) she engaged in activity protected by the FMLA, (2) her employer took an adverse employment action against her, and (3) the two were causally connected." *Malin v. Hospira, Inc.*, 762 F.3d 552, 562 (7th Cir. 2014).

Maglieri's FMLA retaliation claim fails because she cannot show that she suffered an adverse action. Maglieri contends that Costco is liable because Kornecki "severely and pervasively

14

harassed [her] *after* she came back from FMLA leave *because* she took [] FMLA leave." Opp. at 12. The evidence that Maglieri offers in support of this contention—(1) her testimony that Kornecki's yelling and screaming increased after she returned from her FMLA leave; (2) Kornecki's "karma is a bitch" comment; (3) and Kornecki's comments about Maglieri taking too much time off—could be relevant to the question of causation, if, say, Maglieri was fired, demoted, or subjected to some other adverse action. But this evidence does not, and cannot, establish an adverse action.

## **C. State Claims**

Maglieri presses several state-law tort claims, none of which have enough factual support to withstand summary judgment. First, Maglieri's claim for IIED against Kornecki fails to clear the "high bar set by Illinois case law for that type of claim." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017). Under Illinois law, a plaintiff seeking recovery for intentional infliction of emotional distress must prove: "(1) that the defendants' conduct was extreme and outrageous; (2) that the emotional distress suffered by plaintiff was severe; and (3) that defendants' conduct was such that defendants knew that severe emotional distress would be substantially certain to result." *Vickers v. Abbott Labs.*, 719 N.E.2d 1101, 1115 (Ill. App. Ct. 1999). To meet the "extreme and outrageous"

requirement, a defendant's conduct "must be so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80-81 (Ill. 2003). This is "evaluated on an objective standard based on all of the facts and circumstances." *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 866 (Ill. App. Ct. 2000). In the employment context, courts typically hesitate to deem conduct extreme and outrageous "unless an 'employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment.'" *Richards*, 869 F.3d at 567 (quoting *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006)).

Here, Maglieri has not adduced sufficient evidence for a reasonable jury to conclude that Kornecki's conduct was extreme and outrageous. Maglieri argues that Kornecki's conduct meets this threshold not because of what she said, but because of "*how she said it.*" Opp. at 13. That Kornecki would "yell and scream" at Maglieri and berate her for not working faster, in Maglieri's view, goes "beyond all bounds of decency." Opp. at 13-14. But Illinois courts do not share such a broad view of extreme and outrageous conduct. *See, e.g., Tabora v. Gottlieb Mem. Hosp.*, 664 N.E.2d 267, 275 (Ill. App. Ct. 1996) (falsely claiming an hospital employee is incompetent, revoking his privileges,

16

causing him to endure "constant berating" in front of other staff, among other things, did not rise to level of extreme and outrageous conduct); *see also Shamim v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 512 (N.D. Ill. 2012) (plaintiff's allegation that defendant subjected him to "outbursts of yelling, profanity and insults about [his] religion and ethnicity" not enough to state claim for IIED). The fact that Maglieri found Kornecki's conduct to be objectionable is not enough to make it actionable. "[I]f everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action." *Naeem*, 444 F.3d at 606. To avoid this, Illinois courts have set a high bar for IIED claims, one that Maglieri cannot overcome.

Maglieri's NIED claim against defendants Riggott, Harris, and Landrum also fails but for an even simpler reason. As defendants argue, these claims are preempted by the Illinois Workers' Compensation Act's exclusivity clause, 820 ILCS § 305/5(a), which bars "employees from bringing common law tort actions against co-employees for injuries negligently inflicted by co-employees in the course of their employment." *Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1229 (1990); *see also Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater*

*Chicago*, 104 F.3d 1004, 1016-17 (7th Cir. 1997). In her response brief, Maglieri entirely ignores this hurdle and accordingly concedes the argument. Finally, because Maglieri's underlying IIED and NIED claims fail, her *respondeat superior* claim fails with them. *See S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 863 (N.D. Ill. 2010).

### III.

For the foregoing reasons, defendants' motion for summary judgment is GRANTED.

**ENTER ORDER:**

_[signature]_

**Elaine E. Bucklo**
Dated: March 14, 2018     United States District Judge